# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET C. GOOCH, | ) 1:07cv1674 LJO DLB |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION ) REGARDING PLAINTIFF'S SOCIAL ) SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

## BACKGROUND

Plaintiff Margaret C. Gooch ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on February 15, 2005, alleging disability since February 28, 2004, due to chest pain, heart problems, arthritis and mental problems. AR 21, 63-66. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Administrative Law Judge ("ALJ"). AR 44, 56-60, 46-51. ALJ Heely held a hearing on October 10, 2006. AR 256-277. He issued a decision denying benefits on November 22, 2006. AR 18-29. On September 17, 2007, the Appeals Council denied review. AR 5-9.

Hearing Testimony

ALJ Heely held a hearing on October 10, 2006, in Stockton, California. Plaintiff appeared with her attorney, Charles Oren. AR 256.

Plaintiff testified that she was born in 1947 and graduated high school. She studied nursing after high school and also performed secretarial work. She was currently staying with a friend, and was homeless prior to that. AR 260, 266. She used to own a house with her husband and children but no longer sees relatives or friends. AR 266.

Plaintiff does not have a driver's license and gets around by bus. She last worked in 2003 as a telemarketer and she did not think that she could now perform that position. AR 261. She explained that she has painful arthritis in her back, knees, toes, ankles, hands, elbows and shoulders. AR 262. She takes medication that sometimes help. She also goes to group therapy for depression. AR 263. She takes Effexor for her depression and last had a drink about four or five months ago. Plaintiff is in AA, and prior to stopping, she was drinking a six-pack a day for two or three months. AR 264. She tries to go to one meeting a day, for an hour. She also smokes about a half-pack of cigarettes a day, down from two to three packs a day, although her doctor has told her to stop. Plaintiff has breathing problems. AR 265.

Plaintiff goes to church every Sunday, from about 9:30 am to noon. She also goes to a church-based program for alcoholics and drug addicts once week, for about an hour and a half. AR 267. Once in a while, she goes to prayer meetings for about two hours. AR 267.

Plaintiff normally watches about three to four hours of television a day. She grocery shops once a week. She uses her food stamps for food, but collects bottles and cans to buy cigarettes. AR 268.

In addition to her depression and arthritis, Plaintiff has chronic obstructive pulmonary disorder ("COPD"). Damp, cold weather and walking make the condition worse. AR 269. Plaintiff admitted that she does some walking when collecting bottles and cans. AR 271.

When questioned by her attorney, Plaintiff explained that she suffers from shortness of breath when she walks. AR 270. Her doctor told her that she has severe emphysema and she coughs a lot during the day. AR 271. Plaintiff lays down in the afternoon because she's exhausted from being short of breath. AR 272. In the mornings, she gets up, uses her inhaler, has a cup of coffee, smokes a cigarette and then sits back and relaxes. She gets dressed and checks her appointments. AR 272. She uses her inhalers four times a day. AR 273. Plaintiff sometimes has problems climbing the three steps to the house, especially when the weather is bad or there is a lot of pollen in the air. AR 275.

<u>Medical Evidence</u>

Plaintiff presented to Stanislaus County Health Services on November 8, 2004. She indicated that she had not had any medical care in about 20 to 30 years. Plaintiff complained of eight to ten months of intermittent chest pain, which was usually associated with stress or exertion and relieved by rest. Plaintiff reported a history of a myocardial infarction in the 1970s for which she received medication. She continued to smoke up to one pack a day. She denied drug or alcohol use. Tracy Brockman, M.D., reviewed an electrocardiogram which showed a normal sinus rhythm but a possible right antral enlargement. She was started on aspirin and nitroglycerin. Tobacco cessation was highly recommended. AR 152-153.

On December 3, 2004, Plaintiff complained of three episodes of chest pain over the past month. She was diagnosed with borderline hypertension and started on medication. She was also diagnosed with angina with exertion and instructed to continue with her nitroglycerin. She was counseled on her tobacco dependence. AR 150.

Plaintiff underwent a treadmill exercise study on January 12, 2005. She tolerated a moderate level of exercise, but had some mild chest pain. The criteria for ischemia was not met. AR 148.

On February 18, 2005, Plaintiff continued to complain of chest pain. The treating source noted that her chest pain was likely secondary to obstructive sleep apnea as there was no coronary artery disease. Her high blood pressure was stable on medication. AR 147.

Treatment notes from June 3, 2005, indicate that Plaintiff's chest pain was significantly improved with Atenolol. Her blood pressure was borderline elevated and her medication was increased. She complained of depression and reported that she has a high alcohol intake. Plaintiff was started on a trial of Effexor and told to stop smoking. AR 146.

On July 19, 2005, State Agency physician David Pong, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk about six hours and sit for about six hours. She could occasionally climb, stoop, kneel, crouch and crawl and could frequently balance. AR 161-168.

Plaintiff saw David S. Kerwin, Jr., M.D., on July 26, 2005. She complained of depression and indicated that the Effexor helped, but did not help her mood swings. She also reported that her asthma was getting worse, but she was still smoking. She had an asthmatic, smoky type of cough, very distant breathing sounds and some scattered rhoncus. AR 170. Dr. Kerwin thought that her depression may be bipolar disorder because of the extreme mood swings he observed while she was talking. AR 170. Her blood pressure was controlled with medications. AR 171.

Plaintiff saw S.K. Madireddi, M.D., on November 9, 2005, for a consultive examination. She complained of chest pain, depression, mood swings, and pain in her back, hands, knees and feet. Plaintiff reported drinking four to five beers a week and smoking one pack of cigarettes a day. Her physical examination was essentially normal, with full range of motion throughout, full motor strength and no sensory deficits. Lung fields were clear to percussion and auscultation. Dr. Madireddi diagnosed a history of chest pain with no objective findings. Plaintiff had not used nitroglycerin recently, had not had a cardiac work-up and last had chest pain a year and a half ago. He also diagnosed a history of depression and/or bipolar disorder, low back ache with no objective findings, and pain in her hands, knees and feet with no objective findings. Her COPD appeared to be well controlled. He noted that Plaintiff should be encouraged to "see her physician for multiple medical problems." Dr. Madireddi did not find any basis for any work restrictions. AR 172-174.

Plaintiff underwent a pulmonary function test on December 7, 2005.  The test was normal and Plaintiff did not seem to have any obstructive or restrictive lung disease.  She did have improvement post bronchodilatory treatment.  AR 175.

On December 13, 2005, a State Agency physician completed a Physical Residual Functional Capacity Assessment form.  The doctor opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk about six hours and sit for about six hours.  Plaintiff had no postural, manipulative, visual of communicative limitations.  However, Plaintiff had to avoid even moderate exposure to fumes, odors, dusts, etc.  AR 181-188.

Plaintiff saw Lana Lechabrier, M.D., for a consultive psychiatric examination on December 18, 2005.  She described Plaintiff as thin, casually dressed and "of neglected appearance."  Her chief complaint was that she had been homeless for two months after being evicted from her apartment due to nonpayment of rent while her husband was in prison.  Plaintiff admitted to heavy alcohol use until fairly recently, when she "cut back," as well as heavy smoking.  She has cut back to half a pack a day, but recently has smoked less because of lack of funds.  Plaintiff reported shopping, cooking, doing housework and budgeting her money.  Plaintiff also reported blackouts, which Dr. Lechabrier described as "typically in people with alcoholism."  On examination, Plaintiff's affect and mood were depressed.  She admitted to suicidal ideation, but had no plan, and although she had not attempted suicide in the past, she admitted to thinking about killing herself many times.  There was no evidence of a thought or perceptual disorder and her cognition was grossly intact.  She was able to remember five out of five objects after five minutes, albeit slowly.  She was also able to repeat five numbers forward and backward correctly, although she was slow.  She made a mistake in serial sevens and Dr. Lechabrier noted that more detailed cognitive testing "may well reveal cognitive deficits."  Her judgment was good because she has recognized herself to be an alcoholic and attends AA meetings.  AR 191-192.

Dr. Lechabrier diagnosed depression, not otherwise specified, and alcoholism per history.  She noted that it was "difficult, given her current living situation to see her working."  Although Plaintiff reported that she was not impaired in daily activities, Dr. Lechabrier noted that evidence

would indicate otherwise "in that she was evicted for nonpayment of rent two months ago." Plaintiff admitted to a history of alcoholism and unless it was treated, "blackouts, difficulty concentrating and inability to a task would make it impossible for her to follow instructions and complete tasks in a workplace setting." AR 193.

On February 10, 2006, State Agency physician David Gross, M.D., completed a Mental Residual Functional Capacity Assessment. He opined that Plaintiff had moderate limitations in numerous areas, but retained the residual functional capacity ("RFC") to perform non-public simple, repetitive tasks. Plaintiff would be okay around peers and supervisors, but would need limited public contact. She would be able to adapt to most work activities. AR 194-196. In a related Psychiatric Review Technique form, Dr. Gross opined that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 201-212.

On June 20, 2006, Plaintiff's depression was reported as "stable" with medication. Plaintiff reported a cough, but no shortness of breath. She was smoking a half a pack a day. AR 234.

Plaintiff underwent chest x-rays on June 21, 2006. The x-rays revealed emphysema, but no acute infiltrate or cardiac enlargement. The test also revealed minimal degenerative changes of the spine. AR 233.

Plaintiff was seen on July 24, 2006, in follow-up for COPD. She was "doing well" on medication. Plaintiff reported that she smoked one pack per day and was advised to stop. AR 226.

On September 5, 2006, Plaintiff sought treatment from Stanislaus County Behavioral Health and Recovery Services for depression. She denied suicidal or homicidal ideations and there was no evidence of delusions or hallucinations. Plaintiff reported that she was attending church and found it helpful. She reported drinking daily and smoking one pack of cigarettes daily. On mental status examination, Plaintiff appeared disheveled, but was pleasant and oriented to person, time and place. Her mood was depressed and affect appropriate. Her thought was logical and directed. Her memory was normal for recent, immediate recall, but her

concentration was poor. Plaintiff was of average intellect and had fair insight, judgment and impulse control. She reported being clean and sober for 78 days and refused alcohol treatment. She was diagnosed with depressive disorder, not otherwise specified, and alcohol dependence. She was referred to group therapy sessions. AR 249-252.

On September 20, 2006, Plaintiff underwent a pulmonary function test. She reported that she was down to a half a pack a day, from two to three packs a day. The results were consistent with severe COPD, although her function improved post-bronchodilation. AR 219-221.

Plaintiff attended weekly therapy sessions through October 18, 2006. She was instructed on processing her feelings, meditations and affirmations. AR 236-238.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of COPD and arthralgias. Despite this, she retained the RFC to lift and carry 50 pounds occasionally, 25 pounds frequently, stand/walk for six hours and sit for six hours. She had to avoid even moderate exposure to fumes, odors, dusts and gases. AR 23. With this RFC, the ALJ determined that Plaintiff could perform a significant number of medium jobs. AR 29.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (COPD and arthralgias) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) does not have any past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 23-29.

Here, Plaintiff argues that the ALJ (1) wrongly concluded that she did not suffer from a severe mental impairment; and (2) failed to consult a Vocational Expert ("VE").

////

////

////

////

**DISCUSSION**

A.  Plaintiff's Mental Impairment

Plaintiff first contends that the ALJ wrongly concluded that her mental impairment was not severe. In so arguing, she suggests that the ALJ improperly rejected the opinions of Dr. Lechabrier and Dr. Gross.

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

Here, the ALJ found that the opinions of Dr. Lechabrier and Dr. Gross, the only two physicians who examined and/or evaluated Plaintiff's mental impairment, were not supported by the mental status examination and he therefore did not assign them any weight. AR 26-27. For example, although Dr. Lechabrier opined that Plaintiff's history of alcoholism, if not treated, would cause blackouts, difficulty concentrating and an inability to follow instructions and complete tasks, the mental status examination did not support a similar limitation for her *current* mental impairment. AR 193. As the ALJ explained, the record did not show any prior blackouts or complaints thereof. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (ALJ properly rejected physician's opinion where it was not supported by clinical evidence and was based on claimant's subjective complaints). Moreover, Dr. Lechabrier's mental status examination showed intact memory and cognition and good judgment. AR 191-192. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (lack of supporting clinical findings is a valid reason for rejecting a physician' opinion).

9

1        The ALJ also contrasted Plaintiff's most recent mental health treatment with Dr.
Lechabrier's assessment.  In September 2006, when Plaintiff sought treatment with Stanislaus
County, she was oriented to person, time and place.  Her mood was depressed, affect appropriate
and thought logical and directed.  Although her concentration was poor, her memory was intact
and she was of average intellect and had fair insight, judgment and impulse control.  She reported
being clean and sober for 78 days and refused alcohol treatment, explaining that attending church
was helping.  AR 249-252.  Given that the most recent notes indicate that Plaintiff had not been
drinking for the past four months and had found support from her church group, the ALJ properly
rejected Dr. Lechabrier's speculative opinion as to what would happen if Plaintiff's alcoholism
remained untreated.

        In support of her argument, Plaintiff cites the symptoms and diagnoses noted by Dr.
Lechabrier, but symptoms and diagnoses do not necessarily translate into a finding that an
impairment is severe.  *See*s *eg. Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the mere
diagnosis of an impairment is not sufficient to sustain a finding of disability).

        The ALJ also determined that Dr. Gross' opinion was not deserving of any weight.  AR
26.  He explained that the limitation to simple, repetitive tasks with no public contact was not
consistent with Plaintiff's mental status examination that showed no cognitive defects.  AR 26.
Again, an ALJ is entitled to disregard opinions that are not supported by objective findings and it
is the ALJ's duty to resolve conflicts in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th
Cir. 1989).

        The ALJ also explained that Plaintiff's daily activities were inconsistent with a finding
that she would have difficulty dealing with the public.  Indeed, Plaintiff reported going to church,
prayer services and AA meetings.  *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir.
2004) (ALJ can reject physician opinion if it inconsistent with other evidence); *Sample v.
Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically
flowing from the evidence).

        Plaintiff focuses mainly on the "moderate" restrictions found by Dr. Gross.  However,
moderate restrictions do not necessarily mean an impairment is severe, especially where, as here,

the physician concludes that the claimant can perform simple, repetitive tasks with virtually no other impact on her ability to work from a mental standpoint.

Plaintiff also cites 20 C.F.R. § 404.1521, which defines a non-severe impairment and basic work activities. Although Plaintiff suggests that findings of "moderate" limitations "refute" the conclusion of a non-severe impairment, section 404.1521 provides otherwise. "Basic work activities" is defined as, among other things, "understanding, carrying out and remembering simple instructions." 20 C.F.R. § 404.1521(b)(3). So, even if the ALJ had credited Dr. Gross' findings, his conclusion that Plaintiff could perform simple, routine tasks is consistent with a finding that Plaintiff's mental impairment did not have more than a minimal impact on basis work activities and was therefore non-severe.

Based on the above, the ALJ's decision that Plaintiff's depression had no more than a minimal impact on her ability to work was supported by substantial evidence. Her claim is without merit and should be denied.

B.   Use of a Vocational Expert

Finally, Plaintiff argues that the ALJ erred in relying on the Medical-Vocational Guidelines ("Grids") and should have solicited the testimony of the VE. Plaintiff argues that her need to avoid even moderate exposure to pulmonary irritants renders reliance on the Grids inappropriate. To the extent Plaintiff's argument relies on non-exertional mental limitations, her argument has been foreclosed by the Court's severity analysis, above.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether

a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

Here, the ALJ determined that Plaintiff's need to avoid even moderate exposure to pulmonary irritants had little or no effect on the occupational base of unskilled, medium work. AR 29. He cites a portion of SSR 85-15 in support of his finding, which states that a "restriction to avoid excessive amounts of noise, dust, etc.," has a minimal impact on the broad world of work. However, the RFC provided that Plaintiff needed to avoid "*even moderate* exposure" to such irritants, and SSR 85-15 further provides that where a claimant "can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." The regulation continues,

> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.

While the regulation does not specifically address a need to "avoid even moderate exposure," it seems that such a restriction would be more akin to "tolerat[ing] very little," rather than "avoid[ing] excessive" levels. In such an instance, the impact on the occupational base would be considerable and a VE would be necessary. Even where the restriction is somewhere in between, evaluation of the impact on the occupational base would generally require the use of a VE.

Therefore, the ALJ's conclusion that Plaintiff's need to avoid even moderate exposure to pulmonary irritants and his decision to rely on the Grids was legal error.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a

rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand is appropriate to address the above errors. On remand, the ALJ must use a VE to determine the impact of Plaintiff's non-exertional limitation on the occupational base.

### RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not free of legal error. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED, the action BE REMANDED, and that JUDGMENT be entered for Plaintiff Margaret Gooch and against Defendant Michael J. Astrue.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 22, 2008**              /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE